IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling Division

**DIANA MEY, and
KENNETH JOHANSEN,
individually and on behalf of a class of all
persons and entities similarly situated,**

       **Plaintiffs,**

vs.                                                    Case No. 5:20-cv-33

**ONE UNITED FIDELITY GROUP, LLC,**
An Ohio corporation;
**SCOTT GIFFORD,**
An individual;
**MICHAEL MCALLISTER,**
An individual;
**SENIOR LIFE INSURANCE COMPANY,**
A Georgia corporation;
**ROYAL NEIGHBORS OF AMERICA,**
An Illinois corporation;
**JOHN DOES,**
**Corporate and individuals presently unknown,**

       **Defendants.**

## AMENDED CLASS ACTION COMPLAINT

### Preliminary Statement

1. According to the Federal Trade Commission's December 2017 Biennial Report to Congress, the emergence of new communications technologies has caused the number of illegal telemarketing calls to explode in recent years. Consumer complaints to the FTC about illegal calls have more than quintupled over the last ten years, growing from about 63,000 per month in 2009 to an average of more than 450,000 per month in fiscal year 2019.

2. The sheer volume of illegal telemarketing overwhelms the enforcement efforts of government agencies such as the FTC and the Federal Communications Commission.

Consequently, private consumer enforcement actions, which Congress authorized when it enacted the Telephone Consumer Protection Act ("TCPA") in 1991, play a critical role in combatting illegal telemarketing.

3. Plaintiffs bring this action to enforce the TCPA in the face of illegal telemarketing by Defendants to enforce the TCPA's strict limits on telemarketing calls placed through automated telephone dialing systems ("ATDS") and artificial or prerecorded voice messages, as well as calls placed to numbers listed on the Do Not Call Registry.

4. Under the TCPA, efforts to shirk responsibility by shifting the blame fail. The TCPA imposes liability not only on the entities that place illegal telemarketing calls, but also on those entities that hire them and benefit from them.

5. Vicarious liability is an essential feature of the remedial provisions and purposes of the TCPA. According to the FCC, the agency charged with interpreting the statute, a seller is not shielded from liability simply because *others* violate the law on its behalf and for its benefit. This is so in part because the agents and lead-generators that place illegal calls often are judgment proof and difficult to identify, and sellers like One United, Senior Life Insurance Company, and Royal Neighbors of America are best positioned to monitor and control their activities. Under these circumstances, and to further protect consumers from the nuisance and privacy-invasion of unwanted telemarketing, liability is imputed to the more reputable and more financially solvent sellers.

6. Because the calls to Ms. Mey and Mr. Johansen were transmitted using technology capable of generating thousands of similar calls per day and because the Plaintiffs have been on the Do Not Call Registry, Plaintiffs bring this action on behalf of two proposed nationwide classes of other persons who received the same illegal telephone calls.

7. A class action is the best means of obtaining redress for the Defendants' illegal telephone calls and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

8. Plaintiffs bring this action to enforce the TCPA's strict limits on telemarketing calls placed through ATDS to cellular telephone lines and calls to numbers on the Do Not Call Registry. On behalf of the proposed classes defined below, Plaintiffs seek statutory damages of $500-$1500 per illegal call and injunctive relief requiring Defendants to comply with the law.

**Parties**

9. Plaintiff Diana Mey resides in this District.

10. Plaintiff Kenneth Johansen resides in Ohio.

11. Defendant One United Fidelity Group, LLC, d/b/a One Work, is an Ohio corporation that transacts business throughout the United States, including in this District.

12. Defendant Scott Gifford is the Owner of One United Fidelity Group and is a resident of Ohio who conducts business throughout the United States, including this District.

13. Defendant Michael McAllister is a resident of Pennsylvania who is a registered insurance agent in this State and who conducts business in this District.

14. Defendant Senior Life Insurance Company, d/b/a as Senior Solutions, Senior Benefits, or Senior Life, is a Georgia corporation that transacts business throughout the United States, including this District.

15. Defendant Royal Neighbors of America is an Illinois corporation that transacts business throughout the United States, including this District.

16. The John Doe Defendants are additional individuals, agents, lead generators, or entities whose identity is presently unknown, who engaged in all or some of the acts in this

Complaint or who are part of a joint enterprise with other Defendants. Alternatively, the John Doe Defendants participated in the business affairs and/or exercised a degree of control sufficient to impose liability for the actions of other Defendants.

## Jurisdiction & Venue

17. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227 et seq.

18. This Court has personal jurisdiction over Defendants because they engaged in, directed, and/or carried on business activities in this District. More specifically, Defendants dialed or directed others to dial Plaintiff Mey's number with a dedicated (304) West Virginia area code, causing her phone to ring in Ohio County for purposes of transacting business in this State, and upon information and belief, engaged in other persistent courses of conduct which constitute minimum contacts for purposes of personal jurisdiction.

19. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim—namely, the automated calls to the Plaintiff—occurred in this District.

## Statutory Background

20. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

21. Perhaps the most well-known aspect of the TCPA was the creation of the National Do Not Call Registry. By adding a telephone number to the Registry, a consumer indicates her desire not to receive telephone solicitations. *See* 47 C.F.R. § 64.1200(c)(2).

22. The TCPA makes it unlawful to (1) make calls to cellular telephone lines using an "automatic telephone dialing system," or (2) make calls to any cellular or residential line using an artificial or prerecorded voice, without the call recipient's prior express consent. *See* 47 U.S.C. § 227(b)(1)(A) & (B); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012).

23. The FCC has explained that such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

24. The TCPA and its implementing regulations also prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

**Factual Allegations**

25. Each Plaintiff has received illegal telemarketing calls from the Defendants or their agents or affiliates. Each Plaintiff was harmed by these calls. Among other things, they were temporarily deprived of legitimate use of their phones and their privacy was invaded.

26. Defendant One United provides telesales leads to insurance agents in order to provide call recipients "peace of mind to know that their final expenses are taken care of and do it over the phone."

27. One United explains on their website that their "platform is automated," leaving the insurance agents more time to sell.

28. One United states on its website that it has "the carriers, the leads [and] the training."

5

29. Defendant Senior Life Insurance, including its affiliates, is an insurance marketing company that supports insurance agents via telesales and other means in the sale of insurance policies.

30. On information and belief, Senior Life Insurance and Royal Neighbors of America hire One United who buys leads from the John Doe Defendants to sell insurance products.

31. Defendant Michael McAllister is an insurance agent who uses telemarketing to sell insurance policies.

32. McAllister works with insurance marketing organizations like One United and Senior Life Insurance in furtherance of those goals.

33. In so doing, McAllister manages general agents to market certain insurance carrier's policies and products via telemarketing.

34. McAllister worked as a "downstream" insurance producer or agent for One United.

35. McAllister had One United obtain leads for him to sell insurance products.

36. Defendant Scott Gifford is a regional Vice President for Senior Life and the Founder and President of One United Fidelity Group.

37. Gifford arranged for his agent or associate, Mass Roor Mansoor, to work with McAllister to generate telemarketing leads for insurance sales.

38. Through that relationship, Mr. Ransoor would provide telemarketing leads for McAllister.

39. Gifford manages other insurance agents and producers, often referred to as downstream producers, such as McAllister.

40. Gifford created One United to help him carry out that business via telemarketing and through the use of equipment that has the capacity to autodial thousands of telephone numbers per day.

41. Senior Life Insurance and Royal Neighbors of America knowingly hire One United to sell insurance policies through an illegal telemarketing scheme.

42. Senior Life Insurance and Royal Neighbors directly benefit from One United's knowing and willful violations of the TCPA.

43. Through that relationship web, the Defendants placed the calls described in detail below and placed thousands of similar calls to consumers across the nation.

### *Calls to Ms. Mey.*

44. On July 22, 2019, a caller purportedly from "Senior Solutions" made an automated telemarketing call to Ms. Mey's cellular telephone line, (304) 242-XXXX, a number that had been listed on the National Do Not Call Registry for more than 31 days prior to the calls at issue.

45. When Ms. Mey answered the call, a sales representative began reading a scripted pitch for final expense life insurance.

46. After obtaining personal information about Ms. Mey, the caller transferred the call to a state licensed agent, stating that "this call will override any federal or DNC list."

47. Eric Boyton picked up the call and identified himself as a "licensed professional here in your state."

48. To identify the company, which was not properly identified at the beginning of the call, Ms. Mey spoke to the telemarketer.

49. Eric sought to sell final expense insurance.

50. Eric provided an insurance quote from Liberty Bankers Life Insurance Company.

51. "Eric" explained that Liberty Bankers Life Insurance is "like the sister company of Liberty Mutual" that is "under the Liberty Mutual Company."

52. Eric Boyton explained that he is a registered insurance agent in West Virginia but that he was calling from California. He stated that his West Virginia license number is 9138201.

53. According to Eric, Senior Solutions, an outfit located in New York, connected him with the call.

54. When Ms. Mey began to push for more information, Eric abruptly disconnected the call.

55. Ms. Mey received similar telemarketing calls on October 4 and October 8, 2019.

56. The calls followed a similar pattern.

57. On October 4, 2019, a caller purportedly from "Senior Benefits" made an automated telemarketing call to Ms. Mey's cellular telephone line.

58. On October 8, 2019, a caller purportedly from "Senior Benefits" made an automated telemarketing call to Ms. Mey's cellular telephone line.

59. Like the July call, the caller sought to sell final expense insurance.

60. Despite having just called a number on the National Do Not Call List, the caller stated that they "scrub this call against the federal do not call list" and that Ms. Mey could expect to receive "information directly from our agent. He's going to call you back even if you are on the federal or state do not call list."

61. When Ms. Mey asked who the agent is and what insurance company they are with, the caller became cagey and repeated that Ms. Mey would receive another call even though her number is on the Do Not Call Registry.

62. On March 24, 2020, a caller purportedly with "American Benefits" made an automated all to Ms. Mey's cellular telephone line.

63. The call came from (229) 228-6936, a number affiliated with Senior Life Insurance Company.

64. Like all the calls involved in this complaint, the caller referenced final expense insurance.

65. The call was then transferred to Michael McAllister, a local insurance salesman out of Pennsylvania.

66. Defendant McAllister informed Ms. Mey that he worked for "One United Insurance" and is licensed in West Virginia.

67. McAllister tried to sell a Liberty Bankers Life insurance policy to Ms. Mey.

68. When Ms. Mey inquired about the individual she spoke with initially from "American Benefits," McAllister explained that he was part of "our support team" at One United.

69. On April 2, 2020, a caller purportedly from "Senior Life" made an automated telemarketing call to Ms. Mey's cellular telephone line.

70. The call came from (229) 228-6936, the same number affiliated with Defendant Senior Life Insurance Company.

71. The caller engaged Ms. Mey but then said that he could not transfer the call to an agent because they were experiencing a high call volume and asked to call Ms. Mey back.

72. Later that day, "Romeo" called Ms. Mey. This time he had Defendant McAllister, a licensed agent, on the line.

73. Again, Mr. McAllister tried to sell Ms. Mey a Liberty Bankers Life insurance policy.

74. When the Plaintiff, or her answering machine, received these calls there was a clicking sound and then an initial long pause.

75. The pause signifies the algorithm of the predictive dialer operating. The predictive dialer dials thousands of numbers at once and only transfers the call to a live agent once a human being is on the line.

76. Based on the ability to engage in predictive dialing, the dialing system used can also likely produce numbers using a sequential number generator and dial them automatically.

77. The dialing system can do this by inputting a straightforward computer command.

78. Following that command, the dialing system will sequentially dial numbers.

79. For example, it would dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

80. This would be done without any human intervention or further effort.

81. Ms. Mey never gave the Defendant consent to call her cellular phone using an autodialer.

### *Calls to Plaintiff Johansen*

82. On March 4, 2020, John Doe made an automated telemarketing call to Mr. Johansen's residential telephone line, (614)-791-XXX, a number that had been listed on the National Do Not Call Registry for more than 31 days prior to the calls at issue.

83. After Mr. Johansen answered the call, he was transferred to Robert Gold, an insurance agent for Royal Neighbors of America.

84. Mr. Johansen pointed out that his telephone number was on the Do Not Call Registry and asked that he not be contacted via that number.

85. When Mr. Johansen asked Mr. Gold where he obtained his telephone number, Gold related that his lead generator provided it to him, explaining that his "principal on the agency side" is Defendant Scott Gifford of One United.

86. In response to Mr. Johansen's written request for information on Mr. Gold's lead generator to sell Royal Neighbors insurance, Mr. Gold explained that his lead generations were arranged through One United Global, which specializes in final expense insurance. Mr. Gold terminated his relationship with One United after learning of these violations of the TCPA.

87. Despite being on the Do Not Call Registry and expressly requesting to be taken off any call list, from September 2018 to present, Mr. Johansen has received at least twelve similar calls where the caller or agent sought to sell Royal Neighbors of America insurance.

## Class Action Allegations

88. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs sue on behalf of all other persons or entities similarly situated throughout the United States.

89. The classes of persons Plaintiffs propose to represent include:

CLASS 1 (Count One):

> All persons within the United States to whom, within the four years prior to the filing of this action, Defendant, or a third party on its behalf (a) placed a call on a cellular telephone line, (b) using equipment that has the capacity to dial numbers automatically without human intervention, (c) without prior express consent of the recipient evidenced in the Defendant' records.

CLASS 2 (Count Two):

    All persons within the United States (a) whose telephone numbers were listed on the Do Not Call Registry for at least 31 days, and (b) to whom Defendant, or a third party on its behalf, initiated more than one call within any twelve month period at any time within for years prior to the filing of this action, (c) to promote the sale of its products or services.

90. Excluded from the class are the Defendant, any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

91. The proposed class members are identifiable through phone records and phone number databases that will be obtained through discovery.

92. The potential class members number in the thousands, at least. Individual joinder of these persons is impracticable.

93. Plaintiff Mey is a member of both classes.

94. Plaintiff Johansen is a member of the Do Not Call Class (Class 2).

95. There are questions of law and fact common to Plaintiffs and the proposed classes, including but not limited to:

    a. Whether the Defendant used an automatic telephone dialing system to send telemarketing calls;

    b. Whether the Defendant placed telemarketing calls without obtaining the recipients' valid prior express written consent;

    c. Whether the Defendant placed more than one call within a 12-month period to numbers on the Do Not Call Registry;

    d. Whether the Defendant's violations of the TCPA were negligent, willful, or knowing; and

    e. Whether the Plaintiffs and the class members are entitled to statutory damages because of the Defendant's actions.

96. Plaintiffs' claims are based on the same facts and legal theories, and therefore are typical of, the claims of class members.

97. Plaintiffs are adequate representatives of the classes because their interests do not conflict with the interests of the classes, they will fairly and adequately protect the interests of the classes, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

98. The actions of the Defendant are applicable to the classes and to Plaintiffs.

99. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and through reliable databases.

100. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

101. Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's provisions prohibiting autodialed calls to cell phones

102. Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

103. The Defendant violated the TCPA, either directly or through the actions of others, by initiating a telephone call to Plaintiff's cellular telephone lines using an automatic telephone dialing system. *See* 47 U.S.C. § 227(b)(1)(A).

104. The Defendant's violations were willful and/or knowing.

### Count Two:
### Violation of the TCPA's Do Not Call provision

105. Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

106. The Defendant violated the TCPA, either directly or through the actions of others, by initiating more than one telephone call to the Plaintiffs in a twelve-month period while their number was on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c).

107. The Defendant's violations were willful and/or knowing.

### Relief Sought

Plaintiff requests the following relief:

A. That the Court certify the proposed classes;

B. That the Court appoint Plaintiffs as class representatives;

C. That the Court appoint the undersigned counsel as counsel for the class;

D. That the Court enter a judgment permanently enjoining the Defendant from engaging in or relying upon telemarketing, or, alternatively, from engaging in or relying upon telemarketing using an ATDS or calling numbers on the National Do Not Call Registry;

E. That Defendant and its agents, or anyone acting on its behalf, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members;

F. That the Court enter a judgment awarding Plaintiffs and all class members statutory damages of $500 for each negligent violation of the TCPA and $1,500 for each knowing or willful violation;

G. That the Plaintiffs and all class members be granted other relief as is just and equitable under the circumstances.

**Plaintiffs request a jury trial as to all claims of this Complaint so triable.**

>Plaintiffs,
>By Counsel,

 */s/ Jonathan R. Marshall*
Jonathan R. Marshall (WV Bar No. 10580)
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV  25301
Telephone: (304) 345-6555
jmarshall@baileyglasser.com

Benjamin J. Hogan (WV Bar No. 12997)
Bailey & Glasser, LLP
6 Canyon Road, Suite 200
Morgantown, WV 26508
bhogan@baileyglasser.com

Anthony Paronich (admitted *pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
anthony@paronichlaw.com